UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-14110-CIV-MARTINEZ/MAYNARD

**NJC GUIDE SERVICE, LLC,**

    Plaintiff,

v.

**SONIC BOATWORKS, LLC,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me upon a Motion for Final Default Judgment filed by Plaintiff NJC Guide Service, LLC ("NJC"). DE 8. No response in opposition has been timely filed. Presiding U.S. District Judge Jose E. Martinez has referred this Motion to me for appropriate disposition. DE 9. Having carefully reviewed the record and being otherwise fully advised, I **RECOMMEND** that NJC's Motion be **GRANTED** for the following reasons.

## FACTUAL BACKGROUND

This case stems from the sale of a 36' Contender Center Console vessel bearing Hull Identification No. JDJ36027H001 ("Vessel"). DE 1 at ¶ 9. NJC is a Maryland limited liability company whose sole individual member is domiciled in Maryland. *Id.* at ¶¶ 1-2. Defendant Sonic Boatworks LLC ("Sonic") is a Florida limited liability company whose only two members are domiciled in Florida. *Id.* at ¶¶ 3-4. The following factual background draws from the allegations in NJC's Complaint and its attached supporting documentation.

In October 2022, NJC was seeking a center console fishing vessel capable of safely fishing hundreds of miles offshore. DE 1 at ¶ 15. At the time, Sonic was the registered and title owner of

the Vessel. *Id.* at ¶ 10. That same month, Sonic listed its Vessel for sale on several websites advertising that the Vessel was powered by triple 2018 Suzuki DF300 outboard engines with 600 hours and had new gas tanks that "sat during covid." *Id.* at ¶¶ 11-13; DE 1-3 (Certificate of Title); DE 1-4 (Facebook Marketplace posting). At the time of the advertisement, the Vessel was located at Sonic's boat building facility in Fort Pierce, Florida. *Id.* at ¶ 14.

After discovering the Vessel on Facebook Marketplace, NJC's owner initated contact with the online poster, Juan Garcia a/k/a Joshua Alonso, who was also Sonic's Manager. DE 1 at ¶¶ 16-17. On November 17, 2022, in an online chat, NJC's owner asked Mr. Alonso "Hours on the motors?" and Mr. Alonso responded "600." *Id.* at ¶ 18. On November 29, 2022, NJC's owner asked Mr. Alonso for confirmation that the Vessel's fuel tanks had been redone. *Id.* at ¶ 19. Mr. Alonso responded with (1) photos of the fuel tanks as proof the tanks were redone; (2) a January 2020 sales receipt showing the tanks were replaced in early 2020; and (3) an invoice in support of the contention that all three engines had under 600 hours. *Id.* at ¶¶ 16-17; DE 1-5 (January 2020 sales receipt); DE 1-6 (Integrity Marine Invoice).

Based on the representations and assurances made by Sonic's Manager, Joshua Alonso, and included in Sonic's online advertisements, NJC agreed to purchase the Vessel for $118,000.00. DE 1 at ¶ 23. On November 29, 2022, Sonic provided NJC a bill of sale transferring ownership of the Vessel from Sonic to NJC in exchange for a wire payment of $118,000.00 from a NJC-affiliate to Sonic. *Id.* at ¶¶ 24-25.

On March 1, 2023, NJC received possession of the Vessel and claims to have subsequently discovered that Sonic (i) made numerous fraudulent and false representations regarding the Vessel's engines and fuel tanks, and (ii) forged several documents to support the false claims regarding the condition of the Vessel's engines and fuel tanks. *Id.* at ¶¶ 26-27. For example, NJC

recently learned that the Vessel's fuel tanks were not replaced. According to NJC, Marine Maintenance Managers confirmed in a letter that the invoice Sonic provided to NJC in connection with the Vessel's acquisition was forged and inaccurate. *Id.* at ¶¶ 28-29; DE 1-7 (April 10, 2023 letter from Marine Maintenance Managers stating that the Vessel had never been to their shop and the invoices provided to NJC "are complete forgeries constructed by the selling party"). In addition, according to NJC, Sonic significantly underrepresented the number of hours on the Vessel's engines and two (2) of the engines were manufactured prior to 2018 in direct contravention of what was started in forged, inaccurate invoices Sonic provided to NJC. DE 1 at ¶¶ 30-34; DE 1-8 (Phillips Marine Work Order No. W-112853); DE 1-9 (Letter from Marine Maintenance Managers).

NJC claims to have been significantly damaged as a result of Sonic's false, fraudulent, misleading and negligent misrepresentations, which induced NJC to purchase the Vessel to its detriment.

## **PROCEDURAL BACKGROUND**

On April 19, 2023, NJC filed a three-count Complaint against Sonic alleging revocation of acceptance (Count 1), contract recission (Count 2), and fraudulent inducement (Count 3). DE 1. According to an Affidavit of Service filed in the record, Sonic was served with the Summons and Complaint on April 21, 2023. DE 4. Service was accomplished by hand-delivering a true copy of these documents to Sonic's corporate registered agent, Anna Gore. *Id.*

On May 15, 2023, the presiding U.S. District Judge ordered the Clerk of Court to enter a default against Sonic based upon Sonic's failure to timely answer or otherwise respond to the Complaint after having been duly served with process. DE 6. That same day, a Clerk's Default

was entered against Sonic "for failure to appear, answer, or otherwise plead to the complaint filed herein within the time required by law." DE 7.

On June 22, 2023, following entry of the Clerk's Default, NJC filed the instant Motion seeking a final default judgment against Sonic in the total amount of $47,680.00 as to NJC's cause of action for fraudulent inducement (Count 3). DE 8. In support of its Motion, NJC attaches the signed, sworn declaration of Dennis Foster who is the President of Florida-based Fosters Yacht Services, Inc. DE 8-1. According to his sworn declaration, Mr. Foster was retained to offer his opinions regarding the Vessel, including the cost of replacing the Vessel's fuel tanks and nonconfirming engines. *Id.*

## DISCUSSION

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that a defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) (internal quotation omitted)).

A court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment under Rule 55(b). *See U.S. v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu*, 515 F.2d at 1206). Entry of default judgment is warranted only "when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a

sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)). "While a complaint ... does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If the admitted facts are sufficient to establish liability, the court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004). "Following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." *Evans v. Com. Recovery Sys., Inc.*, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (quoting *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005)); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011) (noting Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

Here, NJC seeks a final default judgment because, after properly serving Sonic with a summons and a complaint on April 21, 2023, Sonic failed to appear, plead, or otherwise defend against this action. NJC seeks $47,680.00 in \damages. Below, I will discuss Sonic's liability before turning to the matter of the damages sought.

**A.      Liability – Fraudulent Inducement**

Fraudulent inducement is the inducement to enter a contract by false statements. The legal elements of fraudulent inducement are: (1) false statement of material fact; (2) the maker of the

statement knew or should have known of the statement's falsity; (3) the maker intended to induce the claimant's reliance on the statement; (4) the claimant relied on the statement to its detriment. *Rose v. ADT Sec. Services, Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008); *see also Democratic Republic of the Congo v. Air Cap. Grp., LLC*, 2013 WL 3223688, at *3 (S.D. Fla. June 24, 2013) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Typically, a claim must be based on a false statement about a past or existing fact, rather than an unfulfilled promise of future action. *See, e.g.*, *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001 collecting cases). A claim for fraudulent inducement also must be specific enough to meet the heightened pleading requirements for claims sounding in fraud under Fed. R. Civ. P. 9(b).

Here, NJC adequately alleges a claim for fraudulent inducement with the required specificity. NJC's Complaint establishes that Sonic fraudulently induced NJC to purchase the Vessel by knowingly making materially false statement and misrepresentations regarding the Vessel's engines and fuel tanks. According to NJC, Sonic knew the information was false and intentionally disguised the falsehoods by submitting forged invoices and documentation. The Complaint alleges that NJC justifiably relied on Sonic's false statements and misrepresentations to its detriment. Specifically, based on the material misrepsentations, NJC was induced to purchase the Vessel for $118,000.00 and NJC "would not have purchased the Vessel if [Sonic] had truthfully disclosed the number of engine hours or the fact that the fuel tanks had not been replaced." DE 1 at ¶¶ 46, 83-84, 87.

NJC's factual allegations—described and summarized above—are sufficient to establish Sonic's liability. The Complaint's well-pleaded and specific factual allegations, taken as true due to the default, state a valid claim for fraudulent inducement against Sonic. Based on the

Complaint's allegations and supporting documentation, I thus recommend that default judgment be entered in NJC's favor on its fraudulent inducement claim.

**B.   Damages**

"If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount." *Fernandez de Cordoba*, 2018 WL 1811945 at *5 (S.D. Fla. Feb. 9, 2018). "Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested." *Id.*; *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985).

Rule 55 does not require an evidentiary hearing on the amount of damages, and it is within the Court's discretion to choose whether such a hearing should take place. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). "In issuing a default judgment, a court may award damages without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation, as long as all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005). "Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, *i.e.,* from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law." *Bowman*, 432 So. 2d at 662. Damages are unliquidated if testimony is required to ascertain facts upon which to base a value judgment of the exact sum. *Id.* at 663.

Here, an evidentiary hearing is not required because the record adequately reflects the basis for the damages sought. NJC seeks $47,680.00 in damages calculated as follows:

```
   $58,500.00 – Average value of 2018 engines with 600 hours ($19,500 x 3)
 – $36,000.00 – Value of the engines as purchased ($13,000 + $9,000 + $14,000)
   $22,500.00 – Difference in engine value (actual vs. represented)
 + $25,180.00 – Cost to replace fuel tank
   $47,680.00 – Total Damages
```

DE 8 at 5. Plaintiff has filed a sworn declaration by Mr. Foster in support of these damages. DE 8-1. In his declaration, Mr. Foster avers that the above total damages represent the cost of replacing the fuel tanks and nonconforming engines, *i.e.*, the amount necessary to rectify the fraudulent misrepresentations, based on Mr. Foster's "review of the Vessel's paritculars, a review of the Verified Complaint, and my almost 40 years of experience in the boat repair business." *Id.* at ¶ 11. Mr. Foster's declaration includes an attached report setting forth his detailed reasoning and additional support for his findings. *Id.* at 4-6.

Based on NJC's well-pled claim for fraudulent inducement establishing liability against Sonic and Mr. Foster's supporting affidavit, I recommend that NJC recover its requested amount of $47,680.00 in damages plus interest as provided by law.

## CONCLUSION

Consistent with the foregoing, I respectfully **RECOMMEND** that NJC's Motion for Final Default Judgment, DE 8, be **GRANTED** and that a final default judgment be entered in favor of Plaintiff, NJC Guide Services, LLC. I further **RECOMMEND** that Plaintiff, NJC Guide Services, LLC be **AWARDED** a total damages amount of $47,680.00, to bear interest from the date of the Court's final default judgment at the legal rate as provided by law.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District

Judge Jose E. Martinez. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 5th day of October, 2023.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE